IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1) MID-CONTINENT CASUALTY COMPANY,<br><br>      **Plaintiff,**<br><br>v.<br><br>2) KCHM, INC., f/k/a FDH, INC., and<br>3) KCHM & ASSOCIATES, INC., f/k/a FDH ENGINEERING, INC.,<br><br>      **Defendant.** | Case No.   19-CV-259-RAW<br>Judge   Ronald A. White |

## COMPLAINT

Plaintiff, Mid-Continent Casualty Company ("MCC"), for its Complaint seeking declaratory relief against Defendant KCHM, INC., f/k/a FDH, INC. ("KCHM"), and KCHM & Associates, Inc., f/k/a FDH Engineering, Inc. ("KCHM & Associates"),[1] alleges and states as follows:

### PARTIES, FACTUAL BACKGROUND, JURISDICTION, AND VENUE

1. MCC is a corporation organized under the laws of Ohio, with its principal place of business in Oklahoma.

2. KCHM is a corporation organized under the laws of North Carolina, with its principal place of business in North Carolina.

3. KCHM & Associates is a corporation organized under the laws of North Carolina, with its principal place of business in North Carolina.

---

[1] Defendants are hereinafter collectively referred to as "FDH"

4. In or about 2013, FDH entered into Master Service Agreement ("MSA") with S&S Construction Specialists, Inc. ("S&S"), an Oklahoma corporation located in Hulbert, Oklahoma.

5. The MSA related to construction activities to be performed on cellular telephone towers in West Virginia, by S&S, FDH, and others.

6. S&S obtained a general liability policy from MCC, numbered 04-GL-000888641 (the "Oklahoma Policy," attached as Exhibit 1). The Oklahoma Policy was issued in Tulsa, Oklahoma, and received by S&S in Hulbert, Oklahoma. The Oklahoma Policy had limits of $1,000,000, and was in force in February 2014.

7. At its demand, FDH was named as a conditional additional insured under S&S's Oklahoma Policy issued by Oklahoma insurer, by an endorsement, which, among other things, required the existence of a valid written insured contract (as that term is used in the Oklahoma Policy) entered into between S&S and FDH, prior to any bodily injury or property damage claimed to be covered under the Oklahoma Policy.

8. On February 1, 2014, the West Virginia construction activities of S&S and FDH resulted in a multiple fatality accident involving the collapse of cellular telephone towers, which in turn spawned seven litigations in the state and federal courts of West Virginia alleging property damage and personal injury (collectively, the "West Virginia Litigations," described more fully below).

9. The West Virginia Litigations are captioned and briefly described as follows:

- *Faith Garrett, Administratrix of the Estate of Michael D. Garrett, v. S&S Communications Specialists, Inc., et al.*, Circuit Court of Harrison County West Virginia, Civil Action No. 15-C-218-3. This litigation ("Garret Litigation) sought damages for the death of firefighter Michael D. Garrett, killed while responding to the tower collapse.

- *Randall McElhaney, v. SBA Communications Corp., et al.*, Defendants, United States District Court for the Northern District of West Virginia, Civil Action No.

1:15-CV-204. This litigation ("McElhaney Litigation") sought damages for injuries that S&S employee Randal McElhaney suffered during the tower collapse.

- *J. Ron Wright, in his Capacity as Administrator of the Estate of Terry Lee Richard, Jr., v. SBA Communications Corp., et al.*, United States District Court for the Northern District of West Virginia, Civil Action No. 1:15-CV-205. This litigation ("Richard Litigation") sought damages for the death of S&S employee, Terry Lee Richard, Jr., who was killed during the tower collapse.

- *Jerry Hill, v. SBA Communications Corp., et al.*, United States District Court for the Northern District of West Virginia, Civil Action No. 1:15-CV-206. This litigation ("Hill Litigation") sought damages for injuries that S&S employee, Jerry Hill, suffered during the tower collapse.

- *Kyle Kirkpatrick, v. SBA Communications Corp., et al.*, United States District Court for the Northern District of West Virginia, Civil Action No. 1:15-CV-207. This litigation ("Kirkpatrick Litigation") sought damages for the death of S&S employee, Kyle Kirkpatrick, who was killed during the tower collapse.

- *True Knowledge Ministries, Inc. ("TKMI"), v. SBA Communications Corp., et al.*, United States District Court for the Northern District of West Virginia, Civil Action No. 1:15-CV-24. This litigation ("TKMI Litigation") sought economic damages and/or lost profits purportedly resulting from the destruction of radio equipment and the loss of the plaintiff's television signal following the tower collapse.

- *SBA Telecommunications, LLC, as successor in interest to SBA Telecommunications, Inc. and SBA Towers, LLC ("SBA"), v. S&S Communication Specialists, Inc. and FDH Engineering, Inc.*, United States District Court for the Northern District of West Virginia, Civil Action No. 1:15-CV-228. This litigation ("SBA Litigation") sought economic damages allegedly sustained by SBA because of the tower collapse.[2]

10. The FDH entities were defendants in all of the West Virginia Litigations.

11. S&S was not originally a defendant in the S&S Employee Litigations, nor was it originally a defendant in the TKMI Litigation.

---

[2] The McElhaney Litigation, Hill Litigation, Kirkpatrick Litigation and Richard Litigation are collectively referred to herein as the "S&S Employee Litigations." The S&S Employee Litigations, SBA Litigation and TKMI Litigations were all pending before the Honorable Irene M. Keeley of the United States District Court for the Northern District of West Virginia.

12. In the West Virginia Litigations in which S&S was not originally a defendant, FDH sued S&S and brought that Oklahoma corporation into those lawsuits as a third-party defendant. In the SBA Litigation, FDH asserted a cross-claim against Oklahoma corporation S&S.

13. When appropriate under the terms of the Oklahoma Policy, MCC defended S&S in certain of the West Virginia Litigations.

14. In connection with the West Virginia Litigations, FDH repeatedly demanded (by communicating with MCC in Oklahoma) that Oklahoma insurer MCC provide a defense to and indemnity against the claims asserted against FDH, under the conditional additional insured endorsement of the Oklahoma Policy issued to S&S.

15. In connection with FDH's demands for coverage under the Oklahoma Policy issued by Oklahoma insurer MCC, MCC investigated and evaluated FDH's claims for coverage. After investigating the accident, the relationship between S&S and FDH, and other available sources of relevant information, and after evaluating the claims made in the West Virginia Litigations against FDH and analyzing the relevant Oklahoma Policy language, MCC reasonably concluded that the conditions for conditional additional insured coverage (or any coverage) under the Oklahoma Policy were not met, and that the Oklahoma Policy did not cover any claims against FDH. Accordingly, MCC reasonably believed that under Oklahoma law, MCC did not owe FDH a duty to defend it against, or a duty to indemnify it from, any claim in the West Virginia Litigations.

16. Based on that reasonable belief, because the conditions for conditional additional insured (or any) coverage for FDH under the Oklahoma Policy were clearly not met with regard to the West Virginia Litigations, MCC did not defend FDH in the West Virginia Litigations.

17. Based on that reasonable belief, in response to FDH's repeated demands to Oklahoma insurer MCC for coverage under the Oklahoma Policy, MCC notified FDH it would

neither provide a defense to, nor indemnity against, the claims made in West Virginia Litigations. MCC so notified FDH by, at the latest, September 28, 2015.

18. While the West Virginia Litigations were pending, on July 20, 2016, S&S filed for bankruptcy protection in the United States Bankruptcy Court for the Eastern District of Oklahoma, under case number 16-80762 (the "S&S Bankruptcy Proceedings").

19. The S&S Bankruptcy Proceedings resulted in a stay of the West Virginia Litigations.

20. In the S&S Bankruptcy Proceedings, FDH hired an Oklahoma lawyer to represent the interests of KCHM and KCHM & Associates in those proceedings.

21. In the S&S Bankruptcy Proceedings, KCHM made a claim against the Oklahoma bankruptcy estate of Oklahoma corporation S&S, for approximately 25,000,000.

22. In the S&S Bankruptcy Proceedings, KCHM & Associates made a claim against the Oklahoma bankruptcy estate of Oklahoma corporation S&S, for approximately $25,000,000.

23. In the S&S Bankruptcy Proceedings, in August 2016, FDH moved for relief from the automatic bankruptcy stay to continue the West Virginia Litigations.

24. In connection with the S&S Bankruptcy Proceedings, MCC filed an adversary action on November 28, 2016, under Bankruptcy Case Number 16-08025, seeking to interplead the limits of the Oklahoma Policy into the Bankruptcy Court, and to have the Court determine the rights and liabilities of the parties (including the FDH entities) with regard to the proceeds of the Oklahoma Policy.

25. FDH moved to dismiss the MCC interpleader in the Bankruptcy Court, arguing there was no subject matter or personal jurisdiction over FDH. This motion was denied by the Court.

26. In January 2017, FDH answered the MCC interpleader complaint. At that time, FDH sought affirmative relief via crossclaim against Oklahoma insurer MCC, in the form of a declaration that the entire $1,000,000 of the Oklahoma Policy proceeds be paid to FDH.

27. In March 2017, FDH moved to have the Bankruptcy Court abstain from proceeding with the interpleader of Oklahoma insurer MCC. FDH's effort to avoid Oklahoma insurer MCC paying its policy limits into the S&S bankruptcy estate was rejected by that Court.

28. In March 2017, FDH moved to have the bankruptcy Court withdraw the reference of Oklahoma insurer MCC's interpleader action to the bankruptcy court; that led to FDH proceeding in this Court on that withdrawal motion, under Case Number 17-CV-169-RAW. FDH's effort to avoid Oklahoma insurer MCC paying its policy limits into the S&S bankruptcy estate was rejected by this Court.

29. FDH ultimately succeeded in having the bankruptcy stay lifted so that it could proceed with litigation against Oklahoma corporation S&S in the West Virginia Litigations.

30. FDH continued to argue for dismissal of the interpleader action, to avoid Oklahoma insurer MCC paying its policy limits into the S&S bankruptcy estate. These efforts were ultimately successful, as the Bankruptcy Court determined the interpleader was not a core proceeding and abstained from proceeding further.

31. FDH continued to maintain claims against the Oklahoma bankruptcy estate of Oklahoma corporation S&S. Based on settlement of some of the West Virginia Litigations, FDH reduced the claims on the Oklahoma bankruptcy estate, and continued to assert that the lion's share of that Oklahoma bankruptcy estate be paid to FDH

32. The bankruptcy trustee collected approximately $130,000 in gross receipts for the S&S Oklahoma bankruptcy estate, for payment to unsecured creditors. After deduction for

administrative expenses, approximately $101,000 remained in the Oklahoma bankruptcy estate of S&S for payment of claims such as that of FDH. FDH was ultimately awarded approximately $85,000 from the Oklahoma bankruptcy estate of S&S.

33. The West Virginia Litigations have all been resolved by settlement.

34. The Garrett Litigation was settled at mediation in 2018. As part of that settlement, Oklahoma insurer MCC exhausted the limits of the Oklahoma Policy by payment to the Garrett Estate, with the consent of FDH and other parties to the various West Virginia Litigations.

35. The S&S Employee Litigations, the SBA Litigation, and the TKMI Litigation were all settled in 2019.

36. During the S&S Bankruptcy Proceedings, in January 2017, FDH sued Oklahoma insurer MCC, in the United States District Court for the Eastern District of North Carolina, Western Division, under case number 17-CV-18-BO, alleging claims arising from its demand for conditional additional insured coverage under the Oklahoma Policy, based on MCC's September 2015 denial of its demand (the "North Carolina Declaratory Judgment Litigation").

37. MCC moved to dismiss the North Carolina Declaratory Judgment Litigation, arguing that Court lacked personal jurisdiction over Oklahoma insurer MCC.

38. In August 2017, MCC's dismissal motion was granted (see *KCHM. Inc. f/k/a FDH, Inc. v. Mid-Continent Casualty Co.*, 264 F.Supp.3d 697 (E.D.N.C. 2017)), and it was dismissed from the North Carolina Declaratory Judgment Litigation, which is no longer pending.[3]

39. Under the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., based on an actual controversy between the parties, created by Oklahoma insurer MCC's denial of the claim for

---

[3] S&S had also obtained an excess policy from Navigators Insurance, which was a party to the North Carolina Declaratory Judgment Action. It is believed that any potential differences between Navigators and FDH regarding insurance coverage have been resolved.

conditional additional insured coverage made under the Oklahoma Policy by FDH, this litigation seeks a declaration of the rights and legal obligations of the parties arising from FDH's claims for coverage under the Oklahoma Policy.

40. Based on FDH's significant contacts with and activities in Oklahoma and this District, which FDH created or performed, and which relate to MCC's quest for declaratory relief in this litigation, the Court has personal jurisdiction over FDH. By way of example and without limitation, FDH entered into contracts with an Oklahoma corporation related to construction to be performed by that Oklahoma corporation. FDH demanded to be, and became, a conditional additional insured on an Oklahoma insurance policy, which was issued to an Oklahoma corporation by an Oklahoma insurer. FDH repeatedly made claims for insurance coverage under an Oklahoma insurance policy, demanding coverage from an Oklahoma insurance company at its offices in Tulsa, Oklahoma. With regard to that Oklahoma insurance claim, FDH, through Oklahoma counsel, also sought affirmative relief against an Oklahoma insurer, in the form of a claimed entitlement to the proceeds of an Oklahoma insurance policy, in bankruptcy proceedings in this District related to the Oklahoma bankruptcy estate of an Oklahoma corporation. FDH asserted claims against the Oklahoma bankruptcy estate of an Oklahoma corporation in this District. FDH, in this forum, contested the efforts of an Oklahoma insurer seeking to interplead the limits of the Oklahoma Policy into the Oklahoma bankruptcy estate of an Oklahoma corporation. FDH sued an Oklahoma insurer for a declaratory judgment and other relief under the Oklahoma Policy. FDH sued an Oklahoma corporation for claims related to the contract FDH had with that Oklahoma corporation. Based on these and other Oklahoma contacts and activities, this Court's exercise of specific personal jurisdiction over FDH fully comports with due process.

41. Although MCC denies that FDH was ever entitled to any indemnity or defense obligation under the Oklahoma Policy, more than $75,000, exclusive of interests and costs, is at issue in this matter.

42. Accordingly, based on the foregoing, this Court has jurisdiction over the parties to and the subject matter of this matter, under 28 U.S.C. 1332.

43. Because this Court has jurisdiction over FDH and the subject matter of this action, venue is properly laid in this Court as well, under 28 U.S.C. 1391.

## **CLAIM FOR DECLARATORY RELIEF**

44. MCC adopts and incorporates the allegations made in paragraphs 1-43 as if fully restated here.

45. Based on the foregoing, MCC asserts that as a matter of law, the Oklahoma Policy does not provide coverage to FDH for any claim asserted against it in the West Virginia Litigations, nor does it cover any settlements contributed to by FDH in those matters.

46. Because the Oklahoma Policy does not provide any coverage for any claim asserted against FDH in the West Virginia Litigations, MCC is entitled to declaratory relief in this Court.

47. Specifically, MCC is entitled to a declaration of this Court that as a matter of law, the Oklahoma Policy does not provide any coverage for any claim asserted against FDH in the West Virginia Litigations.

48. Further, MCC is entitled to a declaration of this Court that as a matter of law, MCC had no, and has no, indemnity obligation to FDH under the Oklahoma Policy arising from any claim asserted against FDH in the West Virginia Litigations, or from any settlement amount paid by FDH in connection with the West Virginia Litigations.

49. Moreover, MCC is entitled to a declaration of this Court that as a matter of law, MCC had no, and has no, obligation under the Oklahoma Policy to provide FDH with a defense against any claim asserted against FDH in the West Virginia Litigations.

WHEREFORE, MCC prays that this Court issue a judgment declaring that the Oklahoma Policy did not and does not provide any coverage for any claim asserted against FDH in the West Virginia Litigations. MCC further prays that the Court declare that MCC neither owed nor owes FDH any defense obligation under the Oklahoma Policy related to the West Virginia Litigations. MCC further prays that the Court declare that MCC neither owed nor owes any indemnity obligation for any claim asserted against FDH in the West Virginia Litigations, or for any settlement amounts paid by FDH in connection with the West Virginia Litigations. MCC further prays for an award of its costs and fees incurred in bringing this action, and such other and further relief this Court deems appropriate.

Date: August 9, 2019

Respectfully submitted,

/Robert P. Fitz-Patrick
Robert P. Fitz-Patrick, OBA #14713
**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**
320 South Boston Avenue, Suite 400
Tulsa, OK  74103-3708
Telephone (918) 594-0400
Facsimile (918) 594-0505

**ATTORNEYS FOR PLAINTIFF, MID-CONTINENT CASUALTY COMPANY**